970 So.2d 1038 (2007)
Rene L. BROUSSARD
v.
Alice Joyce VOORHIES, David Voorhies, State Farm Mutual Insurance Company, and Southern Farm Bureau Insurance Company.
No. 2006 CA 2306.
Court of Appeal of Louisiana, First Circuit.
September 19, 2007.
Writ Denied December 14, 2007.
*1040 Lawrence K. Burleigh, Sr., Lawrence K. Burleigh, Jr., Lafayette, Counsel for Plaintiff/Appellant Rene L. Broussard.
Jackson B. Bolinger, Lafayette, Counsel for Defendants/Appellees Alice J. Voorhies and State Farm Fire & Casualty Company.
Michael W. Campbell, Lafayette, Counsel for Defendants/Appellees David Voorhies and Louisiana Farm Bureau Casualty Insurance Company.
Before: GAIDRY, McDONALD, and McCLENDON, JJ.
GAIDRY, J.
The owner of a boat shed destroyed by a fire originating on neighboring property appeals a judgment finding the owner and the primary user of the neighboring property free from liability for the fire. For the following reasons, we affirm the judgment.

FACTS AND PROCEDURAL HISTORY
The plaintiff, Rene L. Broussard, and the defendant, Alice J. Voorhies, owned adjacent property in Cypremort Point, Louisiana, on which each had a camp. Ms. Voorhies's camp was built around 1965 by her father, from whom she inherited the *1041 property. Although Ms. Voorhies owned the camp, she only seldom visited it after the late 1980s, and she allowed her three brothers and their families to use it. Her brother, David Voorhies, was the primary user of the camp beginning around 1988 to 1990, and assumed the general responsibility for its maintenance.
An electrical circuit breaker box for Ms. Voorhies's camp was situated on the inside wall of the raised camp's first-floor boat slip, five feet above ground level, with the electrical meter in another box opposite it on the outside wall. The boat shed on Mr. Broussard's property was located only three feet from the outside wall of Ms. Voorhies's camp.
On the morning of February 3, 2001, David Voorhies went to his sister's camp for a few hours to clean it in preparation for the weekend. He washed and dried some clothes, and upon leaving the camp left some appliances running, including a water pump and the refrigerator. At about 6:00 p.m. that evening, he received a telephone call informing him that the camp was on fire. The fire destroyed the camp and Mr. Broussard's nearby boat shed, including a boat and other contents.
Mr. Broussard filed suit against Ms. Voorhies, Mr. Voorhies, and their respective liability insurers, alleging that the fire was caused by their negligence and defective conditions in the Voorhies camp. The defendants answered the petition, denying liability. The defendants subsequently amended their answers to allege the negligence and fault of third parties, including Central Louisiana Electric Cooperative (CLECO), the utility company who owned the electrical meter.
A bench trial took place on April 19, 2006. At the conclusion of the presentation of the plaintiffs case, the defendants moved for involuntary dismissal.[1] The trial court granted the defendants' motions, finding that it was not proven that either Ms. Voorhies or David Voorhies knew or should have known of any defect causing the claimed damages. Its judgment dismissing Mr. Broussard's cause of action was signed on July 12, 2006.
Mr. Broussard appeals, contending that the trial court erred in finding that Ms. Voorhies and David Voorhies exercised reasonable care under the circumstances and in failing to apply the doctrine of res ipsa loquitur.

STANDARD OF REVIEW
Louisiana Code of Civil Procedure article 1672(B) provides for a motion for involuntary dismissal of a plaintiffs action in the course of a bench trial:
In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.
The trial court's grant of an involuntary dismissal is subject to the well-settled manifest error standard of review. *1042 Gauthier v. City of New Iberia, 06-341, p. 3 (La.App. 3rd Cir.9/27/06), 940 So.2d 915, 918. Accordingly, in order to reverse the trial court's grant of involuntary dismissal, we must find, after reviewing the record, that there is no factual basis for its finding or that the finding is clearly wrong or manifestly erroneous. See Stobart v. State, through Dep't of Transp. and Dev., 617 So.2d 880, 882 (La.1993). The issue is not whether the trial court was right or wrong, but whether its conclusion was reasonable. Id.

DISCUSSION
Louisiana Civil Code articles 2315 and 2316 provide the basic codal foundation for delictual liability in our state. In addition to those articles, La. C.C. arts. 2317.1 and 2322 define the basis for delictual liability for defective things and buildings. Louisiana Civil Code art. 2317.1 provides:
The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case. (Emphasis supplied.)
Louisiana Civil Code article 2322 provides the same standard of proof for liability for a defective "building" and its components:
The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice or defect in its original construction. However, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known of the vice or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case. (Emphasis supplied.)
The 1996 legislation enacting La. C.C. art. 2317.1 and amending La. C.C. art. 2322, effective April 16, 1996, abolished the concept of strict liability governed by prior interpretation of the pre-1996 versions of La. C.C. arts. 2317 and 2322. See Dennis v. The Finish Line, Inc., 99-1413, 99-1414, p. 5 n. 8 (La.App. 1st Cir.12/22/00), 781 So.2d 12, 20 n. 8, writ denied, 01-0214 (La.3/16/01), 787 So.2d 319; 12 William E. Crawford Louisiana Civil Law Treatise: Tort Law §§ 19.1, 19.2 (2nd ed.1996). A more appropriate term now for liability under La. C.C. arts. 2317.1 and 2322 might be "custodial liability," but such liability is nevertheless predicated upon a finding of negligence. See Rogers v. City of Baton Rouge, 04-1001, pp. 4-5 (La.App. 1st Cir.6/29/05), 916 So.2d 1099, 1102, writ denied, 05-2022 (La.2/3/06), 922 So.2d 1187.
In an action to recover damages for injuries allegedly caused by another's negligence, the plaintiff has the burden of proving negligence on the part of the defendant by a preponderance of the evidence. Hanks v. Entergy Corp., 06-477, p. 19 (La.12/18/06), 944 So.2d 564, 578. Most negligence cases are resolved by employing the duty-risk analysis, which entails five separate elements: (1) whether the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) whether the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) whether *1043 the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) whether the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) whether the plaintiff was damaged (the damages element). Id., 06-477 at pp. 20-21, 944 So.2d at 579.
The plaintiff in a negligence case may meet his burden of proof by presenting both direct and circumstantial evidence. Cangelosi v. Our Lady of the Lake Med.Ctr., 564 So.2d 654, 664 (La.1990)(on rehearing). Res ipsa loquitur is not a substantive legal tenet, but rather an evidentiary doctrine under which a tort claim may be proved by circumstantial evidence. Gisclair v. Bonneval, 04-2474, p. 5 (La. App. 1st Cir.12/22/05), 928 So.2d 39, 42. The doctrine permits the inference of negligence from the surrounding circumstances, and merely assists the plaintiff in presenting a prima facie case of negligence when direct evidence is not available. Cangelosi, 564 So.2d at 665. Because application of res ipsa loquitur is an exception to the general rule that negligence is not to be presumed, it should be sparingly applied. Spott v. Otis Elevator Co., 601 So.2d 1355, 1362 (La.1992). Generally, it may be applied when three requirements are met: (1) the circumstances surrounding the accident are so unusual that, in the absence of other pertinent evidence, there is an inference of negligence on the part of the defendant; (2) the defendant had exclusive control over the thing causing the injury; and (3) the circumstances are such that the only reasonable and fair conclusion is that the accident was due to a breach of duty on the defendant's part. Id.
Called by the plaintiff as an adverse witness, David Voorhies confirmed that he assumed the responsibility for most of the maintenance of his sister's camp when he began to use it regularly. The camp had two circuit breaker boxes, one downstairs and one in the upstairs living quarters. Mr. Voorhies acknowledged that he had never specifically requested an electrician to inspect the circuit breaker box, and that he did not routinely inspect the interior of the box himself. After the fire, in the course of trying to determine its cause, he was informed by neighbors that they observed sparking at the CLECO electrical meter and up the power line. He was never able to locate the remains of the electrical meter, however. A few weeks after the fire, Mr. Broussard telephoned him and "wanted [Mr. Voorhies] to say that there was a problem with the water pump." He asked Ronnie Bourque, an acquaintance and the fire chief of the New Iberia Fire Department, to inspect the scene to attempt to determine the cause of the fire. Mr. Voorhies testified that he had central air conditioning installed by an air conditioning company in the camp "a couple of years before the fire," and that an electrician performed the actual connection of the air conditioning unit to the circuit breaker box. After that time, he experienced no problems with the camp's electrical system, appliances, or the water pump installed in the camp, and he knew of no problems with the camp that needed repair prior to the date of the fire.
Ms. Voorhies testified that she had last visited her camp during the fall before the fire. She confirmed that her brother David handled all routine maintenance of the camp, but testified that they and another brother shared the expenses in that regard. She was not familiar with the circuit breaker box at issue, and denied prior knowledge of any problems with the camp's electrical system, the box, or the water pump. She admitted that if high water rose from the canal on which the *1044 camp was located, the water would flood the first-floor boat slip, and if it rose high enough, it could have flooded the circuit breaker box.
The plaintiff, Mr. Broussard, testified that on the night of the fire, bystanders told him that they had observed sparks and fire in the electrical meter. Mr. Broussard admitted that he and David Voorhies discussed the possibility of the water pump causing the fire, but denied that he suggested that Mr. Voorhies advise his insurer that the water pump was the cause. Mr. Broussard also admitted that David Voorhies told him that he suspected CLECO might have been responsible for the fire, and that he was aware that Mr. Voorhies was looking for the electrical meter. Although Mr. Broussard eventually found the "burnt and melted" meter, he never informed Mr. Voorhies of the discovery, and simply discarded the meter in a debris pile. Mr. Broussard admitted that he had no personal knowledge that either David Voorhies or his sister failed to maintain the camp's electrical equipment or the circuit breaker box.
Ronnie Bourque, the fire chief of the New Iberia Fire Department, was offered by the plaintiff as an expert in fire investigation. He testified that he inspected the fire scene at the request of David Voorhies, but that his inspection was on an informal basis, as his department had no jurisdiction in Cypremort Point. Based upon the facts that the most heavily damaged area of the camp was in the area of the circuit breaker box and that the box itself had heavy fire damage, Mr. Bourque concluded that the fire started within the box, probably as the result of a circuit breaker overheating and igniting wiring and insulation. He discounted the relevance of the reported description of sparks emanating from the electrical meter conduit, explaining that such occurrences were not uncommon in fires originating in adjacent circuit breaker boxes. Mr. Bourque agreed that it would generally be prudent for a building owner to have a circuit breaker box's condition inspected from time to time, but he conditioned that opinion upon the existence of a "problem with circuit breakers tripping," and admitted that he had no knowledge of any reported problem existing in the Voorhies camp. Mr. Bourque testified that flooding, especially by salt water, would cause deterioration over time of a circuit breaker box's components, requiring their replacement, but admitted that he had no knowledge that the box at issue had ever been inundated. He also admitted that he would have expected the electrician connecting the central air conditioning to have inspected the circuit breaker box and to have seen any visible problem if one existed.
Although the evidence as to the precise source or origin of the fire was conflicting, the trial court in its reasons concluded that the circumstantial evidence, combined with Mr. Bourque's testimony, pointed to a malfunction in the circuit breaker box. Thus, the trial court found that a defect existed in the building or thing for which Ms. Voorhies or David Voorhies, or both, were responsible, and the requisite elements of defect and legal custody under La. C.C. arts. 2317.1 and 2322 were met. But in addition to showing that a defect in the circuit breaker box caused the fire, Mr. Broussard was required to show that Ms. Voorhies and her brother knew or, in the exercise of reasonable care, should have known of that defect, that the damage could have been prevented by the exercise of reasonable care, and that they failed to exercise such reasonable care. Thus, Mr. Broussard had the burden of establishing their actual or constructive knowledge of the defect and *1045 their failure to exercise reasonable care to prevent damages from the defect. The evidence was undisputed that they had no actual knowledge of any problem with the circuit breaker box or other component of the camp's electrical system, so the ultimate issue confronting the trial court was whether they had constructive knowledge of any problem. The concept of constructive knowledge under La. C.C. art. 2317.1 imposes a reasonable duty to discover apparent defects in the thing in the defendant's garde or legal custody. Johnson v. Entergy Corp., 36,323, p. 5 (La.App. 2nd Cir.9/20/02), 827 So.2d 1234, 1238.
Although there was testimony suggesting that the circuit breaker box might have been inundated by floodwaters or storm surges on some indeterminate prior occasions, there was no evidence of the duration or actual effect of any such inundation on it, and there was no evidence of any apparent electrical problem prior to the fire. The issue of whether Ms. Voorhies and David Voorhies exercised reasonable care in the maintenance of her camp, including the circuit breaker box, forms the breach element of the duty-risk analysis, and was a factual issue to be determined by the trial court. The trial court expressly resolved that issue in favor of the defendants, and in light of the record, its decision in that regard was not manifestly erroneous.
In summary, the trial court was correct in concluding that the doctrine of res ipsa loquitur was inapplicable to prove negligence in this matter, as it did not apply to establish the required proof of constructive knowledge and failure to exercise reasonable care. See Harper v. Advantage Gaming Co., 38,837, p. 8 (La.App. 2nd Cir.8/18/04), 880 So.2d 948, 953. We likewise find no manifest error in the trial court's judgment ordering the involuntary dismissal of Mr. Broussard's action, considering the totality of the evidence presented in his case.
The judgment of the trial court is affirmed. All costs of this appeal are assessed to the plaintiff-appellant, Rene L. Broussard.
AFFIRMED.
NOTES
[1] The defendants' counsel orally moved for a "directed verdict," which may be granted in a jury trial under La. C.C.P. art. 1810, rather than for an involuntary dismissal under La. C.C.P. 1672(B), which may be granted in a bench trial. Although Mr. Broussard points out the nominal use of the incorrect procedural vehicle, we consider such error to be one of form rather than substance.