CLARA RENA STRICKLAND
v.
TANGI-LANES BOWLING, INC., THE ST. PAUL PROPERTY AND LIABILITY INSURANCE CO. AND/OR ST. PAUL SURPLUS LINES INSURANCE COMPANY, AND XYZ INSURANCE CARRIERS
No. 2008 CA 1803
Court of Appeals of Louisiana, First Circuit
August 6, 2009
Not designated for Publication
PIUS A. OBIOHA New Orleans, LA, Attorney for Plaintiff-Appellant. Clara Rena Strickland
BARBARA MALIK WELLER Waller & Associates, Metairie, LA, Attorney for Defendants-Appellees. Tangi-Lanes Bowling, Inc. and St. Paul Surplus Lines Insurance Co.
Before: PARRO, McCLENDON, and WELCH, JJ.
PARRO, J.
The plaintiff appeals from a judgment granting defendants' motion for summary judgment. On appeal, the plaintiff seeks reversal of the summary judgment on the ground that the trial court overlooked overwhelming evidence of genuine issues of material fact that was offered by her to oppose the motion for summary judgment. For the following reasons, we affirm.

Factual Background and Procedural History
On December 15, 2003, while in an aisle at a bowling alley owned by Tangi-Lanes Bowling, Inc., Clara Rena Strickland (Strickland) slipped as she stepped onto what appeared to be baby powder and fell. She contends that the fall caused injury to her ribs and trauma to her bladder. On September 2, 2004, Strickland filed a petition for damages against Tangi-Lanes Bowling, Inc. and its insurer, St. Paul Surplus Lines Insurance Company (collectively referred to as Tangi). In her petition, Strickland alleged that Tangi's personnel knew or should have known that the slippery baby powder was left in the aisle, posing a serious risk of harm and injury to the bowlers.
For months after filing its answer, Tangi waited for responses to interrogatories that had been propounded to Strickland and requests for production of documents. On June 14, 2007, Tangi filed a motion for summary judgment. In support of its motion for summary judgment, Tangi denied having actual or constructive notice, prior to the fall, of the defective condition that had allegedly been created by Strickland's teammate. Stickland's June 5, 2006 deposition testimony was offered by Tangi to support its position. The hearing on Tangi's motion for summary judgment was originally set for August 13, 2007. On July 27, 2007, Tangi filed a motion to supplement its motion for summary judgment with a statement of undisputed material facts based on statements made by Strickland in her deposition. In its statement of undisputed material facts, Tangi noted that Strickland indicated in her deposition that she did not see any foreign substance on the floor at the accident site and that she was unaware of any Tangi employees or representatives who knew of the alleged slippery substance.
The hearing on Tangi's motion for summary judgment was postponed three times to allow Strickland time to conduct additional discovery. On February 29, 2008, Tangi moved to have the matter set for hearing again. By order dated March 7, 2008, the hearing was finally set for April 7, 2008. On March 31, 2008, seven days prior to the hearing, counsel for Strickland filed via facsimile transmission a memorandum in opposition to Tangi's motion for summary judgment, but counsel failed to include any of the exhibits or affidavits referenced in the memorandum. The original of Strickland's memorandum was filed into the record on April 4, 2008. The following exhibits were attached to the April 4th filing: affidavit of Strickland's son (Demarcus Strickland) executed on April 2, 2008; accident report dated December 22, 2003; recorded statements by Strickland taken on December 30, 2003, by Mickey Loupe taken on May 3, 2004, and by Ted Storms taken on May 18, 2004; Strickland's medical records; and the deposition of Lee Turney taken on August 22, 2007. Another referenced exhibit was not attached.
On April 4, 2008, Tangi filed a motion to strike Strickland's opposition memorandum and the supporting affidavit based on Strickland's failure to comply with the time requirements of LSA-C.C.P. art. 966. Strickland opposed Tangi's motion to strike, contending that her opposition memorandum was filed on March 31, 2008, within eight days of the hearing.
After the hearing on Tangi's motion to strike and motion for summary judgment, the trial court, in written reasons, found that Strickland failed to comply with LSA-C.C.P. art. 966(B) in that she failed to serve opposing affidavits and memorandum in support thereof at least eight days prior to the date of the hearing. Therefore, Tangi's motion to strike was granted. Regarding Tangi's motion for summary judgment, the trial court found that, after reasonable opportunity for discovery, Strickland was unable to meet her burden of proof, that is, that Tangi had actual or constructive knowledge of the alleged slippery nature of the floor caused by the baby powder. Therefore, the motion for summary judgment was granted, and Strickland's suit was dismissed. Strickland appealed, urging on appeal that she was prohibited from filing an opposition to the motion for summary judgment or offering any evidence in opposition to it.[1] Furthermore, she asserts that the trial court erred in finding that a slip and fall case turns on whether a victim can see the unreasonably dangerous condition.

Timeliness of the Filing of an Opposition
The trial court granted Tangi's motion to strike Strickland's memorandum and her supporting documentation in opposition to its motion for summary judgment based on her failure to comply with the time requirements of LSA-C.C.P. art. 966(B). Under LSA-C.C.P. art. 966(B), an adverse party may serve opposing affidavits, and if such opposing affidavits are served, the opposing affidavits and any memorandum in support thereof shall be served pursuant to LSA-C.C.P. art. 1313, at least eight days prior to the date of the hearing unless the Rules for Louisiana District Courts provide to the contrary.[2] Although parties against whom summary judgments are sought are not obligated to submit affidavits, if they elect to rebut the movant's case through the use of affidavits, those affidavits must be served at least eight days prior to the date of the hearing. The time limitation established by LSA-C.C.P. art. 966(B) for the serving of affidavits in opposition to a motion for summary judgment is mandatory; affidavits not timely filed may be ruled inadmissible and properly excluded by the trial court. Buaaaqe v. Volks Constructors, 06-0175 (La. 5/5/06), 928 So.2d 536, citing American Bank & Trust Company v. International Development Corporation. Inc., 506 So.2d 1234,1235-36 (La. App. 1st Cir. 1987)(the supreme court also stated that the ruling of inadmissibility was within the "discretion" of the trial court); see Acme Refrigeration of Baton Rouae. Inc. v. Caljoan. Inc., 346 So.2d 743, 747 (La. App. 1st Cir. 1977); cf. Peoples State Bank v. Hwy One Crawfish, Inc., 99-1393, 99-1394 (La. App. 3rd Cir. 5/24/00), 771 So.2d 101, 107, writ denied, 00-2842 (La. 12/8/00), 776 So.2d 469;[3] Brinkley v. Murrell Enterprises, Inc., 389 So.2d 435, 437 (La. App. 2nd Cir. 1980).[4]
Counsel for Strickland admits error in filing and sending the opposition by fax seven days prior to the date of the hearing rather than eight days as required by LSA-C.C.P. art. 966(B). Notably, the attachments to the opposition were not made of record at the time of the fax filing. Instead, the referenced attachments, including the affidavit by Strickland's son that she claims is crucial to her case, were filed with the original of the memorandum on April 4, 2008, four days prior to the date of the hearing. Suit was filed by Strickland on September 2, 2004, and Tangi's motion for summary judgment had been pending since June 14, 2007. The hearing on the motion had been continued three times for the expressed purpose of giving Strickland additional time for discovery. On March 7, 2008, the motion was finally set for hearing on April 7, 2008. Given the facts and circumstances of this case, we find no abuse of discretion by the trial court in excluding the documentation filed in opposition to Tangi's motion for summary judgment.

Visibility of the Condition
The trial court granted Tangi's motion for summary judgment based on a finding that Strickland would not be able to meet her burden of proof on an element essential to her claim, that is, that Tangi had actual or constructive knowledge of the alleged slippery nature of the floor caused by the baby powder.
Concerning the burden of proof in claims against "merchants," LSA-R.S. 9:2800.6., as cited and relied on by Strickland in her brief, provides:
A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:
(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
(3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.
C. Definitions:
(1) "Constructive notice" means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition.
(2) "Merchant" means one whose business is to sell goods, foods, wares, or merchandise at a fixed place of business. For purposes of this Section, a merchant includes an innkeeper with respect to those areas or aspects of the premises which are similar to those of a merchant, including but not limited to shops, restaurants, and lobby areas of or within the hotel, motel, or inn.
D. Nothing herein shall affect any liability which a merchant may have under Civil Code Arts. 660, 667, 669, 2317, 2322, or 2695.
One could argue that it is questionable whether Tangi meets the definition of merchant found in LSA-R.S. 9:2800.6(C)(2). Nonetheless, we are responsible for the damage caused by the things which we have in our custody. See LSA-C.C. art. 2317. The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. LSA-C.C. art. 2317.1.
To recover based on the condition of the property, Strickland must show that Tangi knew or, in the exercise of reasonable care, should have known about the presence of the baby powder in the aisle, that the damage could have been prevented by the exercise of reasonable care, and that Tangi failed to exercise such reasonable care. In other words, Strickland had the burden of establishing Tangi's actual or constructive knowledge of the possible defect and its failure to exercise reasonable care to prevent damages resulting from the defect. See Broussard v. Voorhies, 06-2306 (La. App. 1st Cir. 9/19/07), 970 So.2d 1038, 1044-45, writ denied. 07-2052 (La. 12/14/07), 970 So.2d 535.
In Strickland's deposition that was offered in support of Tangi's motion for summary judgment, Strickland testified that she was bowling with other members of a league at Tangi with her son Demarcus. The other members of their team were Ted Storms and Mickey Loupe. She explained that as she walked up to the lane and got ready to bowl with her ball, she slipped and fell, hitting her chest area. She had not noticed any problems with the lane before falling. To her knowledge, no one had voiced complaints to Tangi's employees about a problem. She did not see anyone wipe the floor with a towel. Furthermore, she did not have any powder on her clothes after the fall. According to Strickland, the workers and the people who assisted her after the fall told her that there was powder on the floor where she fell. She testified that Ted Storms later told her that he had put powder on his shoes and hands in the area.
Strickland's testimony does not indicate that Tangi had actual knowledge of any problem with the condition of the aisle being used by Strickland's team. The concept of constructive knowledge under LSA-C.C. art. 2317.1 imposes a reasonable duty to discover apparent defects in the thing in the defendant's garde or legal custody. Broussard, 970 So.2d at 1045. Because Strickland did not see any baby powder on the floor or know of any Tangi employees or representatives who knew of the alleged slippery substance, Tangi urged that Strickland would be unable to prove that it had actual or constructive knowledge of the alleged defect. We agree.
Since Tangi satisfied its burden on the motion for summary judgment by pointing out to the court that there was an absence of factual support for one or more elements essential to Stickland's claim, it was necessary for Strickland to produce factual support sufficient to establish that she would be able to satisfy her evidentiary burden of proof at trial; failure to do so shows that there is no genuine issue of material fact. See LSA-C.C.P. art. 966(C)(2); Clark v. Favalora, 98-1802 (La. App. 1st Cir. 9/24/99), 745 So.2d 666, 673.
Strickland contends that the following were genuine issues of material fact: duration of the existence of the powdery substance on the aisle, actual notice by Tangi, existence of a reasonable inspection procedure, and adequacy of the staffing. However, she failed to produce factual support for these contentions as required by LSA-C.C.P. art. 966(B). Since Strickland failed to produce factual support sufficient to establish that she would be able to prove that Tangi knew or, in the exercise of reasonable care, should have known of the alleged defect which caused the damage, we find there is no genuine issue of material fact as to Tangi's liability under LSA-C.C. arts. 2317 and 2317.1. Therefore, the trial court did not err in granting Tangi's motion for summary judgment.

Decree
For the foregoing reasons, the judgment of the trial court is affirmed, and costs of this appeal are assessed against at Clara Rena Strickland.
AFFRIMED.
NOTES
[1] The trial court's granting of Tangi's motion to strike was an interlocutory judgment, the correctness of which may be considered by this court in conjunction with the appeal of the judgment that granted Tangi's motion for a summary judgment, which is a final and appealable judgment. See People of Living God v. Chantillv Corp., 251 La. 943, 947-48, 207 So.2d 752, 753 (1968); Davis v. Benton, 03-0851 (La. App. 1st Cir. 2/23/04), 874 So.2d 185, 188 n.l.
[2] In 2003, the legislature substituted "eight days prior to the date of the hearing unless the Rules for the Louisiana District Courts provide" for "four days prior to the date of the hearing unless there are local rules of court". See 2003 La. Acts, No. 867, § 1. Clearly, the current rule is applicable in this case.
[3] In Peoples State Bank, the third circuit held that the fact that the defendants' counter-affidavits were filed untimely did not deem them inadmissible; rather, the trial court had discretion to decide whether to admit such affidavits filed untimely. Peoples State Bank, 771 So.2d at 107.
[4] In Brinkley, the second circuit found that although the affidavit submitted in opposition to the defendant's motion for summary judgment was not timely served, where the trial court admitted the affidavit into evidence, which it had discretion to do, the reviewing court could consider the affidavit in determining whether there was a genuine issue of material fact at issue. Brinkley, 389 So.2d at 437.