NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2018 CA 1399

HARRIETTE B. PUGH

VERSUS

ST. JOHN FATHERS' CLUB

*DATE OF JUDGMENT:*     SEP 2 7 2019

ON APPEAL FROM THE EIGHTEENTH JUDICIAL DISTRICT COURT
NUMBER 74019, DIVISION D, PARISH OF IBERVILLE
STATE OF LOUISIANA

HONORABLE ELIZABETH A. ENGOLIO, JUDGE

* * * * * *

| | |
|---|---|
| Robert L. Campbell<br>Baton Rouge, Louisiana | Counsel for Plaintiff-Appellant<br>Harriette B. Pugh |
| John B. Dunlap, III<br>Jennifer A. Fiore<br>Bobbie L. Monroe<br>Hunter R. Bertrand<br>Claire E. Sauls<br>Baton Rouge, Louisiana | Counsel for Defendant-Appellee<br>St. John Fathers' Club |

* * * * * *

BEFORE: MCDONALD, THERIOT, AND CHUTZ, JJ.

Disposition: **AFFIRMED.**

**CHUTZ, J.**

Plaintiff-appellant, Harriette B. Pugh, appeals a summary judgment dismissing her personal injury claims against defendant-appellee, St. John Fathers' Club (St. John). For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Ms. Pugh was a frequent patron at the Bingo Hall operated in Plaquemine, Louisiana by St. John, a volunteer, charitable organization. The proceeds raised by St. John's Bingo Hall benefit grades 5-12 of St. John School.

After Ms. Pugh arrived at the Bingo Hall on February 16, 2014, she picked up her bingo cards and chose a table. As she began to sit down on one of the metal folding chairs provided, the chair collapsed beneath Ms. Pugh, and she fell to the floor. Ms. Pugh claims she hurt her knee, leg, back, hip, shoulder, and neck and could not "really move." She requested an ambulance, which transported her to a hospital in Baton Rouge. According to Ms. Pugh's disposition, the chair collapsed because "[t]he rod piece from up under the chair … came apart from the chair, from one leg of the chair."

On September 5, 2014, Ms. Pugh filed a suit for damages against St. John, claiming St. John's negligence caused her fall and resulting injuries. After answering the petition, St. John filed a motion for summary judgment. The basis of the motion was St. John's contention that Ms. Pugh would be unable to prove the chair contained a defect St. John knew or should have known about. Following a hearing, the district court granted St. John's motion for summary judgment, concluding there was "an absence of any evidence" of an actual defect that was known or should have been known by St. John prior to the chair's collapse.

The district court signed a judgment granting St. John's motion for summary judgment on July 14, 2017, and Ms. Pugh appealed. Because the judgment failed to contain the necessary decretal language dismissing Ms. Pugh's claims against St.

John, this court dismissed the appeal. See *Pugh v. St. John Fathers' Club*, 17-1400 (La. App. 1st Cir. 4/6/18) (unpublished), 2018 WL 1663144. Subsequently, upon joint motion of the parties, the district court signed an amended judgment on June 12, 2018, granting St. John's motion for summary judgment and dismissing Ms. Pugh's claims against St. John, with prejudice. Ms. Pugh now appeals, arguing in a single assignment of error that summary judgment was improper because of the existence of genuine issues of material fact.

## APPLICABLE LAW

A motion for summary judgment shall be granted only if the pleadings, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions, together with the affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3) & (4). In determining whether summary judgment is appropriate, appellate courts review evidence *de novo* under the same criteria that govern the district court's determination of whether summary judgment is appropriate. *Alvarado v. Lodge at the Bluffs, LLC*, 16-0624 (La. App. 1st Cir. 3/29/17), 217 So.3d 429, 432-33, writ denied, 17-0697 (La. 6/16/17), 219 So.3d 340.

The burden of proof rests on the mover. See La. C.C.P. art. 966(D)(1). However, if the mover will not bear the burden of proof at trial on the matter that is before the court on the motion, the mover's burden does not require that all essential elements of the adverse party's claim, action, or defense be negated. Instead, the mover must point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, the adverse party must produce factual evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the adverse party fails to meet this burden, there is no genuine issue of material fact, and the

3

mover is entitled to summary judgment as a matter of law. La. C.C.P. art. 966(D)(1); *Alvarado*, 217 So.3d at 432.

In ruling on a motion for summary judgment, the court's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Alvarado*, 217 So.3d at 432-33. Factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, and all doubt must be resolved in the opponent's favor. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to this case. *Alvarado*, 217 So.3d at 433.

In this case, Ms. Pugh's claims, which are based on the collapse of a chair owned by St. John, are governed by La. C.C. art. 2317.1, which states:

> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.

To establish liability under Article 2317.1, the plaintiff has the burden of proving: (1) the property causing the damage was in the custody of the defendant; (2) the property had a condition creating an unreasonable risk of harm; (3) the unreasonably dangerous condition was a cause in fact of the resulting injury; and (4) the defendant had actual or constructive knowledge of the risk. *McCoy v. Manor*, 18-1228 (La. App. 1st Cir. 5/9/19), ____ So.3d ____, 2019 WL 2051933 at *3; *Tomaso v. Home Depot U.S.A., Inc.*, 14-1467 (La. App. 1st Cir. 6/5/15), 174 So.3d 679, 682.

Thus, to establish liability, Pugh was required to establish St. John had actual or constructive knowledge of the alleged defect in the chair, meaning St. John either knew or, in the exercise of reasonable care, should have known of the alleged defect.

4

The concept of constructive knowledge under Article 2317.1 imposes a reasonable duty on the owner or custodian to discover apparent defects in the thing in his *garde* or legal custody. *Alvarado*, 217 So.3d at 433; *Broussard v. Voorhies*, 06-2306 (La. App. 1st Cir. 9/19/07), 970 So.2d 1038, 1044-45, writ denied, 07-2052 (La. 12/14/07), 970 So.2d 535.

## DISCUSSION

Ms. Pugh argues summary judgment was improper because there was a genuine issue of material fact regarding whether St. John knew or should have known of the risk posed by the defective chair. According to Ms. Pugh, a screw was missing from the metal support bar that extended between the legs of the chair. Ms. Pugh argues this defect was apparent and would have been discovered by a routine inspection. She contends St. John lacked an adequate policy for inspection of its Bingo Hall chairs.

In support of its motion for summary judgment, St. John introduced the affidavit of Guy Ruggiero, Jr., a St. John member who has volunteered at the Bingo Hall for approximately twenty years. In the affidavit, Mr. Ruggiero stated the Bingo Hall operates five nights a week and a cleaning crew or janitor is paid "to clean and move/rearrange the tables and chairs" after each bingo night. He further stated:

> The janitor is specifically told to clean the tables, chairs and floors and [to] move the chairs to do so. As they have the opportunity, the janitor will inspect the chairs and if they notice any defects or deficiencies to the same, they will discard any broken chairs.

> The janitor is specifically instructed that the chairs are to be thrown away in a dumpster outside immediately if they are found to be defective or malfunctioning or broken in any way. The chairs are replaced with new chairs that are kept stored on a chair rack at the Bingo Hall. ...

> [St. John Fathers' Club] has a hired security guard at all Bingo Games. The security guard is on the floor with the Bingo customers at all times during the Bingo games. The security guard walks around the Bingo tables and chairs and has the opportunity to view the tables and chairs and notice any defects or deficiencies to the same, and discard any broken chairs.

5

[Paragraph numbering omitted.]

Additionally, Mr. Ruggiero stated there were two to three St. John volunteers assigned each bingo night to "work the floor," meaning they walked around picking up bingo cards, mopping up spills, and generally assisting the bingo players.

In opposition to St. John's motion for summary judgment, Ms. Pugh presented photographs of the collapsed chair, which she contends depict an "old and very worn" chair with a screw missing from the metal support bar that goes between the legs of the chair. Ms. Pugh also presented the affidavits of two individuals who were present when the chair collapsed, who each stated the chair appeared "old and worn." Additionally, Ms. Pugh pointed out there was a manufacturer's notice on the bottom of the chair stating the chair "should be inspected regularly for loose or missing screws or rivets, metal fatigue, cracks, broken welds ... and general instability." Ms. Pugh argues St. John failed to comply with the manufacturer's notice. Finally, Ms. Pugh argues St. John had prior knowledge of the risk created by its chairs, since St. John kept new chairs on hand to replace older, worn out chairs. Ms. Pugh testified in her deposition she had seen "people" moving broken chairs on past visits to the Bingo Hall.

Under Article 2317.1, St. John had a reasonable duty to discover *apparent* defects in the chair involved in this incident. See *Alvarado*, 217 So.3d at 433; *Broussard*, 970 So.2d at 1044-45. Our review has revealed no evidence St. John had actual knowledge there may have been a screw loose or missing from the chair. Moreover, St. John introduced evidence establishing it had a reasonable policy for discovering defective or broken chairs and replacing them with new ones. Thus, the burden shifted to Ms. Pugh to present evidence sufficient to show St. John had either actual or constructive notice of a defect in the chair at issue. See La. C.C.P. art. 966(D)(1).

6

The evidence Ms. Pugh presented was insufficient to raise a genuine issue of fact as to whether St. John had actual or constructive notice of a defect in the chair. We find no merit in Ms. Pugh's arguments that constructive notice was shown either by St. John having new chairs available onsite to replace broken or defective chairs or by its purported noncompliance with the instructions in the manufacturer's notice. Rather than supporting Ms. Pugh's position, the fact that new chairs were kept available on a chair rack to replace old ones actually supports St. John's contention that it had a policy in place to discover and replace broken or defective chairs.

Further, we reject Ms. Pugh's contention that St. John had constructive notice of a defect in the chair because it failed to comply with the manufacturer's instruction that the chair should be "inspected regularly for loose or missing screws." The instructions do not specify the nature of the suggested inspections or how they should be conducted. Under Article 2317.1, the concept of constructive knowledge imposed a reasonable duty on St. John to discover any apparent defects in the chair at issue. See *Alvarado*, 217 So.3d at 433; *Broussard*, 970 So.2d at 1044-45. Given the circumstances, we do not believe the manufacturer's instructions imposed any greater duty on St. John than that required by Article 2317.1 to reasonably discover apparent defects. See *Parsons v. Sholand, LLC*, 13-2217 (La. App. 1st Cir. 8/29/14) (unpublished), 2014 WL 4317786 at *3 (rejecting the plaintiff's contention that the defendant's failure to comply with the manufacturer's maintenance instructions was sufficient to create a genuine issue of material fact as to whether the defendant should have known the chair was defective).

Moreover, Ms. Pugh presented no evidence to support her contention that the chair she attempted to sit on had an apparent defect that was discoverable by a routine inspection prior to the accident in question. First, there was no evidence to establish whether the chair had either a loose or missing screw prior to its collapse. The screw could have become dislodged by the collapse itself. Second, if the screw

was merely loose prior to the collapse, there is no evidence a loose screw would have been apparent or readily discoverable without a minute inspection. Third, if a screw was loose or missing prior to the chair's collapse, there was no evidence the chair was in that condition for a period of time long enough that St. John reasonably should have discovered its condition prior to Ms. Pugh's accident.

Based on our *de novo* review, we find Ms. Pugh failed to present evidence establishing a screw in the chair was either loose or missing for such a period of time prior to the chair's collapse that St. John should have discovered the chair's condition through a reasonable inspection within a reasonable time. See *Alvarado*, 217 So.3d at 435. Accordingly, Ms. Pugh did not establish she could meet her evidentiary burden of proving at trial that St. John had actual or constructive notice of the alleged defect in the chair. The district court did not err in granting summary judgment dismissing Ms. Pugh's claims against St. John.

## CONCLUSION

The June 12, 2018 judgment of the district court granting summary judgment in favor of St. John Fathers' Club dismissing the claims of Harriette B. Pugh, with prejudice, is affirmed. All costs of this appeal are assessed to Ms. Pugh.

**AFFIRMED.**