JARED D. JOHNSON

VERSUS

DOLGENCORP, LLC

\* \* \* \* \* \* \*

* NO. 2025-CA-0494

* 

COURT OF APPEAL

* 

FOURTH CIRCUIT

* 

STATE OF LOUISIANA

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2019-06981, DIVISION "B"
Honorable Marissa Hutabarat
\* \* \* \* \* \*
**Judge Monique G. Morial**
\* \* \* \* \* \*
(Court composed of Judge Rosemary M. Ledet, Judge Nakisha Ervin-Knott, Judge
Monique G. Morial)


Jeffrey P. Green
Cayce C. Peterson
JJC LAW LLC
111 Veterans Memorial Blvd., Suite 810
Metairie, LA 70005

      COUNSEL FOR PLAINTIFF/APPELLANT

Stephen C. Resor
Erin E. Cloyd
SALLEY, HITE, MERCER & RESOR, LLC
365 Canal Street
One Canal Place, Suite 1710
New Orleans, LA 70130

      COUNSEL FOR DEFENDANT/APPELLEE

           **AFFIRMED**
           **JANUARY 9, 2026**

Plaintiff-Appellant, Jared Johnson, appeals the May 2, 2025 judgment rendered following a bench trial, dismissing his personal injury suit against Defendant-Appellee, DG Louisiana, LLC ("Dollar General").

MGM
RML
NEK

For the following reasons, we affirm the trial court judgment.

<u>Factual and Procedural History</u>

This litigation arises out of a January 19, 2019 electrical shock injury to Plaintiff's hand allegedly sustained when he attempted to open a refrigerator or freezer door while shopping at the Dollar General store at 2001 St. Bernard Avenue in New Orleans. On July 2, 2019, Plaintiff filed suit in the Civil District Court for the Parish of Orleans against Defendant Dollar General[1] for damages sustained from the January 19, 2019 incident. Dollar General denied liability, contending that the alleged defect to the refrigerator/freezer door did not create an unreasonable risk of harm and further that Plaintiff could not prove that it had any prior actual or constructive notice of the alleged defect before the January 19, 2019 incident, as required under La. C.C art. 2317.1.

---

[1] Plaintiff initially named Dolgencorp, LLC but subsequently amended his petition to name DG Louisiana, LLC, St. Bernard Retail Center, LLC, Dorsey Development DG, LLC, and Dorsey Development Companies, LLC. All defendants, with the exception of Defendant-Appellee herein, DG Louisiana, LLC, were dismissed at trial pursuant to a motion for directed verdict. The dismissal of those defendants is not at issue in this appeal.

1

On February 11, 2025, the matter proceeded to a bench trial. At trial, the parties stipulated that on January 19, 2019, Plaintiff was present at the Dollar General store location at 2001 St. Bernard Avenue. The parties further stipulated that Defendant Dollar General had garde, custody, and control over the St. Bernard Dollar General store location.

Derrick Strong, Plaintiff's friend and music industry colleague, testified at trial that he accompanied Plaintiff to the Dollar General store near St. Bernard Ave. on the date of the incident. He testified that he and Plaintiff walked through the store to purchase some snacks and other items. When they arrived to the refrigerated aisle, he stated that Plaintiff was speaking to him as he reached to open a refrigerator door and abruptly stopped talking, froze, and looked confused. At first, Mr. Strong hit Plaintiff on the chest and asked him, "you all right, bra?" in a somewhat joking manner. However, Mr. Strong testified that shortly thereafter he realized something had happened. He testified that when Plaintiff attempted to open the refrigerator door again, he observed a spark from the door and immediately stopped Plaintiff from attempting to reopen the door.

Mr. Strong testified that he and Plaintiff both then inspected the door and observed exposed wires on the inside of the panel of the door. Mr. Strong testified that the wires were not visible from the outside of the refrigerator. He testified that the refrigerator did not have an exterior handle and appeared to be one with a "groove" handle, where you place your fingers into a hole or seam to pull the door open. He testified that there was a worker farther down the aisle who appeared to be stocking the shelves. Mr. Strong testified that there were boxes stacked up in the aisle; the boxes appeared to contain both merchandise as well as what appeared to be shelving for the store.

2

Mr. Strong testified that they reported the incident to a store employee but did not take any photographs of the store or refrigerator/freezer on the date of the incident. He testified that, upon Plaintiff's request, he drove Plaintiff home after the incident; he stated that Plaintiff told him he planned to go to urgent care or the emergency room shortly thereafter.[2]

Plaintiff testified at trial. Plaintiff recalled walking into the Dollar General store on St. Bernard Ave. to get some food and a cold drink. As he walked to the refrigerated section, he attempted to open a refrigerator door and was immediately shocked. He testified that the door had a groove panel, similar to ones he has seen at Walmart and Publix previously. Plaintiff testified that he was treated rudely by the Dollar General employees, completed an incident report, and was "rushed" out of the store.

Plaintiff did not take any photographs of the store or the area where the incident occurred on the date of the incident. He could not testify as to any length of time that the handle of the freezer may have been missing or the wires exposed. Plaintiff testified that he returned to the store weeks later and took photographs of the area where he claims the incident occurred but at trial could not confirm if the photographs were of the specific freezer or refrigerator that allegedly caused his injury.

Plaintiff testified that sometime in 2020, he moved to Georgia to stay with his twin brother. He eventually underwent physical therapy at BenchMark Therapy in Georgia upon his brother's suggestion and at his own cost. Plaintiff

---

[2] Mr. Strong testified that he has only seen Plaintiff once since the date of the incident. He has communicated with Plaintiff through social media but testified that Plaintiff has not been as present in the music scene as he was before the incident.

testified that while living in Georgia he was involved in a motor vehicle accident that totaled his car but that he did not file a lawsuit arising out of that accident.[3]

Plaintiff testified that his life has been greatly impacted by the Dollar General incident. He testified that he still suffers from headaches, depression, memory issues, and tingling and other pain in his hand as a result of the incident. Plaintiff testified that he has suffered great memory loss and that it oftentimes feels like his mind is "playing tricks on [him]."

Dr. Michael Robichaux, an orthopedic surgeon, testified by deposition that he evaluated Plaintiff on February 6, 2019. He indicated that Plaintiff had reported an electrical injury approximately a month prior and had persistent numbness in his left hand. Upon examination, Dr. Robichaux diagnosed Plaintiff with an electrical injury to the medial nerve. He prescribed Neurontin for nerve pain. Dr. Robichaux testified that many patients with electrical injuries do not have burn marks and that he observed no indicators of malingering or exaggerating symptoms.

Dr. Robichaux testified that he ordered a nerve conduction study which showed "conduction abnormality across the carpal tunnel" which he attributed to the injury at issue. He testified that the nerve was mild to moderately compressed. Dr. Robichaux performed a carpal tunnel release procedure on April 16, 2019. On May 29, 2019, Dr. Robichaux evaluated Plaintiff and determined that his overall numbness had improved as expected following the procedure.

Dr. Donald Faust, an orthopedic hand surgeon, testified at trial that he performed an independent medical evaluation ("IME") on December 8, 2020. He acknowledged that he typically sees patients for an IME before a procedure or

---

[3] At trial, Plaintiff was also questioned about an incident in 2020 for which he sought physical therapy when he injured himself while carrying or installing sheetrock.

surgery is performed, but, in this circumstance, he evaluated Plaintiff approximately one year after he underwent a carpal tunnel release procedure. In his IME report, Dr. Faust indicated that the carpal tunnel treatment was only "temporally" related to the injury at issue. At trial, he testified that it was more probable than not that the carpal tunnel release procedure was not necessitated by the incident at issue.

Dr. Faust testified that Plaintiff's medical reporting to him upon evaluation was "kind of all over the board" and that his examination of Plaintiff revealed normal reflexes with no burn or scar marks on his fingers from the incident. Dr. Faust testified at trial as to his opinion that Plaintiff appeared to be exaggerating his condition. Dr. Faust ultimately concluded Plaintiff "didn't have much wrong with him" and that he could not explain Plaintiff's subjective pain complaints.

Plaintiff introduced into evidence the deposition testimony of Dr. Sebastian Koga, a board certified neurosurgeon, who evaluated Plaintiff on April 22, 2021. He concluded that Plaintiff's complaints were consistent with an electrical injury. He further testified that while an orthopedist specializes in bones, joints, and the skeletal muscles, a neurologist is the appropriate medical professional to diagnose and treat injuries affecting the nerves such as an electrical injury.

Dr. Koga reported Plaintiff had hyperreflexia, which is overstated or "jumpy" reflexes. He recommended Plaintiff obtain an MRI of the brain, which was normal, and a DTI (diffuser tension imaging). Dr. Koga testified that the DTI reflected brain abnormalities in various areas of the brain common in patients with brain fog, mood control, and tremors, which he testified would be consistent with an electrical injury. In July 2021, Dr. Koga diagnosed right ulnar sensory neuropathy and he recommended that Plaintiff be evaluated by a neuropsychiatrist.

Dr. Koga testified that, to his knowledge, Plaintiff did not seek treatment with a neuropsychiatrist and he did not follow-up with Dr. Koga as recommended until he did so in preparation for trial in October of 2024.

After taking the matter under advisement, the trial court issued a written judgment with incorporated reasons on May 2, 2025, rendering judgment in favor of Dollar General and dismissing Plaintiff's suit. In its written reasons for judgment, the trial court underwent a duty/risk analysis and determined that Dollar General owed a duty to Plaintiff to keep its premises in safe condition and free from unreasonably dangerous defects but that Plaintiff failed to meet his burden to prove that the alleged defect at issue was unreasonably dangerous. Moreover, the trial court found that, even had it determined that the condition was unreasonably dangerous, Plaintiff nevertheless failed to prove that Dollar General knew or should have known of the alleged unreasonable condition prior to the incident at issue, a mandatory element under La. C.C. art. 2317.1. This timely appeal followed.

Law and Analysis

On appeal, Plaintiff contends that the trial court erred in determining that he did not satisfy his burden of proof under La. C.C. arts. 2315 and 2317.1. Specifically, Plaintiff contends that the evidence introduced at trial proved that Dollar General breached its duty to Plaintiff and further that it had constructive notice of the unreasonably dangerous condition at issue.

La. C.C. art. 2315(A) states that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." Further, La. C.C. art. 2317 provides that "[w]e are responsible, not only for the damage

6

occasioned by our own act, but for that which is caused by ... the things which we have in our custody."

If a plaintiff claims damage as a result of a "ruin, vice, or defect" in a thing within someone else's custody, this invokes La. C.C. art. 2317.1, which provides:

> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.

La. C.C. art. 2317.1 imposes a duty on a custodian of property to keep [that] property in a reasonably safe condition. *Ramirez v. Lighthouse Prop. Ins. Corp.*, 21-0184, pp. 3-4 (La. App. 4 Cir. 12/15/21), 333 So.3d 1286, 1289-90 (citing *Cheramie v. Port Fourchon Marina, Inc.*, 16-0895, p. 4 (La. App. 1 Cir. 2/17/17), 211 So.3d 1212, 1215).

This Court has recently interpreted La. C.C. art. 2317.1 to require proof of four elements:

> In interpreting La. C.C. art. 2317.1, this Court has explained that to succeed under a custodial theory of recovery, a plaintiff must prove four elements by a preponderance of the evidence. Specifically the plaintiff must demonstrate that 1. the thing was in the custodian's custody or control; 2. the thing had a vice or defect, which created an unreasonable risk of harm; 3. the defendant knew or should have known that the vice or defect presented an unreasonable risk of harm; and 4. the defect caused the plaintiff's damages. *Fisher v. Villere*, 2020-0242, p. 9 (La. App. 4 Cir. 2/24/21), 313 So.3d 1282, 1289 (quoting *Szewczyk v. Party Planners W. Inc.*, 2018-0898, p. 7 (La. App. 4 Cir. 5/29/19), 274 So.3d 57, 62).

*Haynes v. Sewerage & Water Bd. of New Orleans*, 23-0678, p. 17 (La. App. 4 Cir. 7/31/24), 399 So.3d 626, 639-40, *writ denied*, 24-01082 (La. 11/20/24), 396 So.3d 71, and *writ denied*, 24-01085 (La. 11/20/24), 396 So.3d 72.

Plaintiff bears the burden of proving all four of these elements and "the failure of any one is fatal to the case." *Cipolla v. Cox Commc'n La., LLC*, 19-0509, p. 9, (La. App. 4 Cir. 8/5/20), 305 So.3d 911, 917; *see also Hayes*, 23-0678, p. 17, 399 So.3d at 640.

Thus, pursuant to La. C.C. art. 2317.1, a plaintiff in a premises liability action must prove that the premises owner had actual or constructive notice of the alleged defect. *Cipolla*, 19-0509, p. 10, 305 So.3d 911, 918, (citing *Encalade v. A.H.G Solutions, LLC*, 16-0357, p. 8 (La. App. 4 Cir. 11/16/16), 204 So.3d 661, 666). "Constructive notice is defined as 'the existence of facts which infer actual knowledge.'" *Russell v. Forest Isle, Inc.*, 18-0602, p. 5 (La. App. 4 Cir. 12/5/18), 261 So.3d 47, 50 (quoting *Gardner v. Louisiana Superdome*, 13-1548, p. 7 (La. App. 4 Cir. 5/7/14), 144 So.3d 1105, 1109). To prove this temporal element, a plaintiff must put forth evidence of facts to show that the alleged defect "existed for such a period of time that those responsible, by the exercise of ordinary care and diligence, must have known of their existence in general and could have guarded the public from injury." *Id*. Failure to prove actual or constructive notice is fatal to a plaintiff's claim. *Cipolla*, 19-0509, p. 9, 305 So.3d at 917.

In this case, Plaintiff must prove that Dollar General knew or should have known of the alleged defect to the refrigerator or freezer door at issue. At trial, the only witnesses to testify as to the facts surrounding the incident were Plaintiff and his friend, Mr. Strong. The record reflects that no Dollar General employee, manager, or corporate representative was deposed or called to testify at trial. There is no documentary evidence to show Dollar General's policies and procedures for inspecting or maintaining the refrigerated section of the store or evidence to show

8

how long that freezer or refrigerator had been in the store or missing a handle. There was no testimony or evidence concerning the freezer or refrigerator at issue other than Plaintiff and Mr. Strong, who could only testify as to the incident itself. Plaintiff did not produce any evidence of prior issues, concerns, or injuries related to the refrigerator or freezer at issue.

To support his claim that Dollar General had constructive knowledge of the defective refrigerator or freezer, Plaintiff points to Mr. Strong's testimony that boxes were present in the area at the time of the incident. Mr. Strong testified that he observed boxes in the area containing produce and store equipment such as shelving. Plaintiff further points to his own testimony that he observed boxes in the area, stating that he "thought they might have been the handles" for the refrigerator or freezer, inside of the boxes. However, this speculative testimony alone is not sufficient to demonstrate facts from which constructive knowledge can be inferred.[4]

Decree

Upon review of the record, we cannot say that the trial court was manifestly erroneous in its determination that Plaintiff failed to meet his burden to prove that Dollar General had actual or constructive knowledge of the alleged defect at issue, a required element to prevail in his claim under La. C.C. art. 2317.1.

---

[4] Plaintiff also argues that the doctrine of *res ipsa loquitor* should be applied under the facts of this case. The doctrine of *res ipsa loquitor* is "an evidentiary doctrine under which a tort claim may be proved by circumstantial evidence." *Broussard v. Voorhies*, 06-2306, p. 6 (La. App. 1 Cir. 9/19/07), 970 So.2d 1038, 1043(citation omitted). Because application of *res ipsa loquitur* is an exception to the general rule that negligence is not to be presumed, it should be sparingly applied. *Id*, p. 10, 970 So.2d at 1045. Moreover, the doctrine cannot be applied to establish alone the "required proof of constructive knowledge." *Broussard*, 06-2306, p. 10, 970 So.3d at 1045(citation omitted).

Accordingly, we affirm the trial court's May 2, 2025 judgment rendered in favor of Dollar General and dismissing Plaintiff's suit.

**AFFIRMED**