HIGGINBOTHAM, J.
In this negligence action, plaintiff appeals the district court's grant of the defendants' motion for involuntary dismissal at the close of plaintiff's case.
*942 FACTUAL AND PROCEDURAL HISTORY
On September 6, 2010, and December 8, 2010, Lakeshore Chrysler Dodge Jeep, Inc., a new and used vehicle sales and service dealership located in Slidell, Louisiana, lost telephone and internet service for several hours, allegedly precluding Lakeshore from fully conducting its business. After both outages, Lakeshore signed incident reports indicating that the outages were a result of nearby installation of underground cables. At the time of the outages, Lakeshore's internet and phone service provider was Windstream Communications, Inc. To provide service to Lakeshore, Windstream utilized BellSouth Telecommunications, Inc., d/b/a AT & T Southeast's (AT & T) underground cable network. In order to maintain the cable network, AT & T contracted with Grady Crawford Construction Co., Inc., to do line work. Grady Crawford subcontracted with A & A Cable Contractors, Inc., a business specializing in directional drilling and cable installation, to perform the work on AT & T's underground cables that served Lakeshore and other businesses in the area. On December 8, 2010, A & A installed a new cable for AT & T down the street from Lakeshore. In the process of digging for installation of a new cable, A & A pulled back the auger, and the cable providing service to Lakeshore was severed, causing Lakeshore, as well as other businesses in the area, to lose service.
On September 6, 2011, Lakeshore filed a "Petition for Damages" naming as defendants, Windstream,[1] AT & T, Grady Crawford, A & A, and America First Insurance Company. In its petition, Lakeshore claimed that the outages were caused by the negligence of the defendants, and as a result of the outages, it suffered damages in the form of lost sales and profits, as well as inconvenience.
On September 26, 2016, the matter came before the district court for trial. After Lakeshore presented its case, the defendants jointly raised a motion for involuntary dismissal under La. Code Civ. P. art. 1672. The district court granted the defendants' motion, finding insufficient evidence to prove the defendants were the cause of the outage on September 6, 2010, and insufficient evidence to prove negligence on the part of the defendants for the outage on December 8, 2010. On October 18, 2016, the district court signed a judgment dismissing Lakeshore's claims against all of the remaining defendants. Lakeshore appealed.[2]
LAW AND ANALYSIS
Louisiana Code of Civil Procedure article 1672(B) provides the basis for an involuntary dismissal at the close of a plaintiff's case in a bench trial, when a plaintiff has shown no right to relief based on the facts and law. In determining whether involuntary dismissal should be granted, the appropriate standard is whether the plaintiff has presented sufficient evidence in its case-in-chief to establish a claim by a preponderance of the evidence, which means taking the evidence *943 as a whole, the fact or cause sought to be proved is more probable than not. Jackson v. Capitol City Family Health Center , 2004-2671 (La. App. 1st Cir. 12/22/05), 928 So.2d 129, 131. When considering a motion for involuntary dismissal, a plaintiff is entitled to no special inferences in his favor. However, absent circumstances in the record casting suspicion on the reliability of the testimony and sound reasons for its rejection, uncontroverted evidence should be taken as true to establish a fact for which it is offered. Id.
The trial court's grant of an involuntary dismissal is subject to the manifest error standard of review. Broussard v. Voorhies , 2006-2306 (La. App. 1st Cir. 9/19/07), 970 So.2d 1038, 1041-42, writ denied, 2007-2052 (La. 12/14/07), 970 So.2d 535. Accordingly, in order to reverse the trial court's grant of involuntary dismissal, we must find that there is no factual basis for the trial court's finding or that the finding is clearly wrong. Id. , 970 So.2d at 1042. See also Stobart v. State through Dept. of Transp. and Development , 617 So.2d 880, 882 (La. 1993).
Because an involuntary dismissal of an action pursuant to Article 1672(B) is based on the "facts and law," a review of the substantive law applicable to the plaintiff's case is necessary. In an action to recover damages allegedly caused by another's negligence, the plaintiff has the burden of proving negligence on the part of the defendant by a preponderance of the evidence. Hanks v. Entergy Corp. , 2006-477 (La. 12/18/06), 944 So.2d 564, 578. Most negligence cases are resolved by employing the duty-risk analysis, which entails five separate elements: (1) whether the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) whether the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) whether the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) whether the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) whether the plaintiff was damaged (the damages element). Id. , 944 So.2d at 579.
In its first assignment of error, Lakeshore contends that the district court incorrectly concluded that the defendants were not negligent in severing the cable in question on September 6, 2010. The deposition of Mr. Julio Muro, who was employed by A & A at the time of the incident, was introduced into evidence. In his deposition, Mr. Muro stated that on September 6, 2010, A & A had no one in the area and did not have any permits to be on site that day. He noted that September 6, 2010, was Labor Day, and A & A was not working. Mr. Timothy Pierre, who is a field supervisor for Grady Crawford, testified about an incident where A & A was boring next to a manhole and severed the cable with a drill. However, Mr. Pierre said he was not on site when the cable was severed and was not clear on the date the outage occurred. Considering the evidence presented regarding the September 6, 2010 outage, we find no manifest error in the district court's conclusion that Lakeshore did not prove the defendants caused the outage.
In its remaining assignments of error, Lakeshore contends that the trial court erred in finding no negligence on the part of the defendants in causing its internet and phone outages. Specifically, Lakeshore contends that the district court incorrectly concluded that the defendants were not negligent in severing the cable when the exploring pits were only three feet deep and the industry standard for *944 burying those types of cables underground was three-to-five feet; that Grady Crawford was not negligent when in 2000 it installed the cables at a depth below the industry standard of the three-to-five feet; and that AT & T was not negligent when it provided Grady Crawford unsheathed, non-locatable fiber optic cable for installation underground.
In the statement given by Mr. Muro after the December 8, 2010 outage, Mr. Muro said he was given the job by Grady Crawford, that he went to the site to get the "locates," and in attempting to locate an underground fiber optic cable he and his crew spot dug three feet in five areas trying to verify the location. When they were unsuccessful in locating the cable, Mr. Muro called for assistance Mr. Pierre, with Grady Crawford. Mr. Muro testified that Mr. Vick Steudlein, who was also with Grady Crawford and had 30 plus years' experience, came out to help locate the cable. According to Mr. Muro, Mr. Steudlein was unsuccessful in locating the cable.
Mr. Muro said that because they were unable to locate the cable and found nothing that led them to believe they were close to the cable, Mr. Muro attached a reamer and started pulling it back when it came in contact with the cable. He noted that the marks were not good marks. Mr. Muro stated that after the cable was severed, Mr. Gary Bankston with Grady Crawford, who also had 42 years' experience, was unable to locate the cable. Mr. Muro pointed out that three different companies and at least four different locators were unsuccessful in locating the cable. In Mr. Muro's deposition he testified that all of the proper precautions were taken, and he did not know of anything he could have done differently. Mr. Muro testified that he assumed the cable was un-locatable because they put five pairs of copper tracer wire with the cable. Mr. Andres Cruz, who is the owner and president of A & A, also testified that Mr. Muro took all the proper precautions before digging for the cable.
The only testimony regarding how deep the fiber optic cables should be buried underground was from Mr. Pierre, who testified that he places fiber optic cable three feet underground and that is the standard for the industry. He also testified that five feet would be the deepest that the cable should go according to the specifications. As pointed out by the district court, there was no expert testimony indicating that A & A or any of the defendants' conduct failed to conform to the appropriate industry standard for installing new cables. It was clear that A & A, as well as employees of Grady Crawford, thoroughly attempted to locate the cables in the area and worked as quickly as possible to repair the cable when it was severed.
As noted earlier, Mr. Muro made an assumption that AT & T used a non-locatable aerial cable since copper tracer wire was buried with the cable. Mr. Pierre, who installed the cables in 2000, testified "that could be what the problem is, because part of it was aerial, and they may have just come down the pole and continued with that aerial cable." Mr. Pierre further testified that he put tracer wire with the cable. Again, no evidence was introduced to prove AT & T used a wire that was not appropriate for underground burial at the time it was installed or that the cables were not buried at the appropriate depth.
The district court concluded that in its case in chief Lakeshore did not establish by a preponderance of the evidence the negligence of the named defendants. As pointed out by the district court, "Mr. Cruz's testimony indicated that both A & A and Grady Crawford did everything possible and reasonable to locate the cable," and "Mr. Muro's testimony convinced the court that every possible precaution was *945 taken during the interruption." The district court's finding that Lakeshore failed to prove whether the defendants had a duty to conform their conduct to a specific standard or that the defendant's conduct failed to conform to the appropriate standard is not clearly wrong. After thorough review of the record, we find no manifest error in the district court's finding that Lakeshore failed to prove negligence on the part of the defendants and therefore, affirm the district court's grant of the defendants' motion for involuntary dismissal.
CONCLUSION
For the foregoing reasons, the judgment of the district court is affirmed. All costs of the appeal are assessed to plaintiff-appellant, Lakeshore Chrysler Dodge Jeep, Inc.
AFFIRMED.

At the time of trial, Windstream was no longer involved in the suit.

Lakeshore appealed from the denial of its motion for new trail. A judgment denying a motion for new trial is an interlocutory order and is normally not appealable. See La. Code Civ. P. art. 2083(C). However, when a motion for appeal refers by date to the judgment denying a motion for new trial, but the circumstances indicate that the appellant actually intended to appeal from the final judgment on the merits, the appeal should be maintained as being taken from the judgment on the merits. Byrd v. Pulmonary Care Specialists, Inc. , 2016-0485 (La. App. 1st Cir. 12/22/16), 209 So.3d 192, 195.