STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER 2019 CA 0719

IN RE: SUCCESSION OF HAZEL NELL MORAN FOGG

**Judgment Rendered: FEB 2 1 2020**

\* \* \* \* \* \*

On appeal from the
Twenty-Second Judicial District Court
In and for the Parish of St. Tammany
State of Louisiana
Docket Number 2017-30993

Honorable Peter Garcia, Judge Presiding

\* \* \* \* \* \*

Gary L. Fogg
Angie, LA

In Proper Person, Defendant/Appellant
Gary L. Fogg

Gary J. Williams
Slidell, LA

Counsel for Plaintiff/Appellee
Glynne Jones, III

\* \* \* \* \* \*

BEFORE: WHIPPLE, C.J., GUIDRY, AND BURRIS,[1] JJ.

---

[1] Judge William J. Burris, retired, serving *pro tempore* by special appointment of the Louisiana Supreme Court.

**GUIDRY, J.**

The Appellant appeals from a judgment dismissing his petition to annul a testator's will due to lack of testamentary capacity and undue influence. For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

The decedent, Hazel Nell Moran Fogg, died on October 9, 2017. She was survived by four adult children, namely, Glynne Jones, III (Mr. Jones); Milton Fogg, Jr.; Gary L. Fogg (Mr. Fogg); and Charles Fogg; she was predeceased by a daughter, Elizabeth Fogg.

In a last will and testament dated October 28, 2008, the decedent named as beneficiaries her daughter, Elizabeth Fogg, and son, Gary L. Fogg. Subsequently, the decedent executed a last will and testament, in notarial form, dated October 6, 2017, which is the subject of this appeal. In the latter will, the decedent expressly disinherited her son, Gary L. Fogg, and bequeathed her estate to her three remaining children: Glynne Jones, III; Milton Fogg, Jr.; and Charles Fogg. The testament also named son Glynne Jones, III as executor of the estate.

On or about November 2, 2017, Mr. Jones filed a petition to probate the testament of his mother and confirm his appointment as executor of the estate. Attached to the petition was a copy of the decedent's October 6, 2017 Last Will and Testament, which was admitted to probate by order of the court dated November 13, 2017. By order of the same date, the court also confirmed the appointment of Mr. Jones as the independent executor.

Thereafter, on May 16, 2018, Mr. Fogg filed a petition to annul the October 6, 2017 testament, asserting that the decedent lacked capacity when she signed the testament, and in doing so, was unduly influenced by her son, Mr. Jones. A hearing was held before the trial court on August 15, 2018, at which time Mr. Fogg presented evidence in support of his petition. Following the presentation of Mr.

Fogg's evidence, Mr. Jones moved for an involuntary dismissal. In its oral ruling, the trial court reasoned that Mr. Fogg had not met his burden of proof, and as such, the court was obligated to grant Mr. Jones' motion to dismiss, pursuant to La. C.C.P. art. 1672. A judgment to that effect was signed on September 4, 2018, dismissing Mr. Fogg's petition with prejudice. Mr. Fogg now appeals, contending that the trial court erred in denying his petition to contest probate and annul the testament. Mr. Jones filed an answer to the appeal.

## DISCUSSION

Louisiana Code of Civil Procedure article 1672(B) provides the basis for an involuntary dismissal at the close of a plaintiff's case in a bench trial, when a plaintiff has shown no right to relief based on the facts and law. In determining whether involuntary dismissal should be granted, the appropriate standard is whether the plaintiff has presented sufficient evidence in its case-in-chief to establish a claim by a preponderance of the evidence, which means taking the evidence as a whole, the fact or cause sought to be proved is more probable than not. Lakeshore Chrysler Dodge Jeep, Inc. v. Windstream Communications, Inc., 17-0841, p. 4 (La. App. 1st Cir. 12/21/17), 240 So. 3d 939, 942-943. When considering a motion for involuntary dismissal, a plaintiff is entitled to no special inferences in his favor. However, absent circumstances in the record casting suspicion on the reliability of the testimony and sound reasons for its rejection, uncontroverted evidence should be taken as true to establish a fact for which it is offered. Lakeshore Chrysler Dodge Jeep, Inc., 17-0841 at pp. 4-5, 240 So. 3d at 943.

The trial court's grant of an involuntary dismissal is subject to the manifest error standard of review. Broussard v. Voorhies, 06-2306, p. 4 (La. App. 1st Cir. 9/19/07), 970 So. 2d 1038, 1041, writ denied, 07-2052 (La. 12/14/07), 970 So. 2d 535. Accordingly, in order to reverse the trial court's grant of involuntary

3

dismissal, we must find that there is no factual basis for the trial court's finding or that the finding is clearly wrong. Broussard, 06-2306 at p. 4, 970 So. 2d at 1042.

Because an involuntary dismissal of an action pursuant to Article 1672(B) is based on the "facts and law," a review of the substantive law applicable to the plaintiff's case is necessary. Lakeshore Chrysler Dodge Jeep, Inc., 17-0841 at p. 5, 240 So. 3d at 943. Here, Mr. Fogg asserts a lack of testamentary capacity and undue influence by Mr. Jones, as at the time of the execution of the testament in question, the decedent was "disoriented, feeble-minded, ... and suffering from a debilitating illness which seriously calls into question [d]ecendent's testamentary capacity, making the alleged will absolutely null."

**Testamentary Capacity**

To have capacity to make a donation *mortis causa,* a person must be able to comprehend generally the nature and consequences of the disposition that he is making. La. C.C. art. 1477. This capacity must exist at the time the testator executes the testament. La. C.C. art. 1471.

There is a presumption in favor of testamentary capacity. In re Succession of Crawford, 04-0977, p. 8 (La. App. 1st Cir. 9/23/05), 923 So. 2d 642, 647, writ denied, 05-2407 (La. 4/17/06), 926 So. 2d 511. A person who challenges the capacity of a donor must prove by clear and convincing evidence that the donor lacked capacity at the time the donor executed the testament. La. C.C. art. 1482(A). To prove a matter by clear and convincing evidence means to demonstrate that the existence of a disputed fact is highly probable, that is, much more probable than its nonexistence. In re Succession of Crawford, 04-0977 at p. 8, 923 So. 2d at 647. Comment (f) of Article 1477 further provides, in part:

> Cases involving challenges to capacity are fact-intensive. The courts will look both to objective and subjective indicia. Illness, old age, delusions, sedation, etc. may not establish lack of capacity but may be important evidentiary factors. If illness has impaired the donor's mind

4

and rendered him unable to understand, then that evidentiary fact will establish that he does not have donative capacity. ... The courts will look to the medical evidence that is available, such as the medical records and the testimony of treating doctors, and to other expert testimony, and to the testimony of lay witnesses. Clearly, no quick litmus-paper test exists to apply to the evaluation of mental capacity in all cases.

In the instant case, Mr. Fogg presented as witnesses to the court Tim Yazbeck, an attorney representing him in his matter of post-conviction relief, and Tammy Nick, an attorney who worked with the decedent on a succession and the decedent's 2008 last will and testament. Mr. Fogg also testified.

Mr. Yazbeck was retained by the decedent to work on Mr. Fogg's criminal matter. According to Mr. Yazbeck, the decedent adamantly and continuously worked to exonerate her son, Mr. Fogg. Mr. Yazbeck also stated that the decedent, Mrs. Fogg, was "lucid and clear" in his last telephone conversation with her, which occurred in September of 2017. When asked if the "disinherison" of Mr. Fogg in the 2017 testament was consistent with the actions of the decedent, Mr. Yazbeck replied, "[N]ot for one second, not even close."

Ms. Nick stated in her testimony that she worked on the decedent's late husband's succession, starting in 2000, and that Mrs. Fogg's three sons, Glynne Jones, Milton Fogg, and Charles Fogg, fought Mrs. Fogg "relentlessly for the entire four years for every penny she needed to survive," until a resolution was reached on that succession. Ms. Nick also stated that Mrs. Fogg came to her in confidence to draft the 2008 testament, which excluded three of her sons. She stated that the decedent and Mr. Fogg had a very close relationship. Regarding the 2017 testament, Ms. Nick stated that the clause disinheriting Mr. Fogg was "a red flag." While she believed the signature on the testament to be that of Mrs. Fogg's, she stated that "obviously she was having some trouble." Ms. Nick had last spoken to and seen Mrs. Fogg in 2016.

5

Finally, Mr. Fogg testified and stated that he took care of his mother, had a close relationship with her, and talked to her "just about every day." Mr. Fogg stated that his mother loved his young son as much, or maybe even more, than she loved him. He further stated that his relationship with his mother was much better than the relationship between her and his brothers. When asked to describe his last visit with his mother, Mr. Fogg stated that it occurred on October 8, 2017. Mr. Fogg stated that he saw his mother incapacitated, and was told that she was on life support and under heavy morphine.[2]

After evaluating the evidence before it, the trial court stated in its oral ruling:

> I just don't think you have presented any evidence to the Court that would give me grounds to believe that you have met your burden of proof under 1483, that you're challenging the donation based on fraud, duress, or undue influence. I don't think you meet the grounds for disinheriting, because there's no forced heirship, and I don't think that you have indicated that she was incapacitated in any way other than a reference to the fact that her signature may have been shaky, she may have been in the hospital, and she may have been under drugs.

We agree. After a thorough review of the record, we can find no evidence offered by Mr. Fogg to establish a lack of diminished capacity by the decedent at the time of the execution of the testament. With almost no evidence regarding the decedent's overall mental condition, condition in the hospital, or drugs that she may have been taking when executing the testament, the evidence falls short of being clear and convincing. Thus, we conclude that the trial court was not clearly wrong in finding that the plaintiff failed to meet his burden of proof.

**Undue Influence**

A donation *mortis causa* shall be declared null upon proof that it was the product of influence by the donee or another person "that so impaired the volition of the donor as to substitute the volition of the donee or other person for the

---

[2] Mr. Fogg also stated that when he saw his brother on October 8, 2017, his brother told him that he had no right to property because he is owned by the State.

volition of the donor." La. C.C. art. 1479. Comment (b)[3] of Article 1479 further provides:

> [T]he objective aspects of undue influence are generally veiled in secrecy, and the proof of undue influence is either largely or entirely circumstantial. ... [E]veryone is more or less swayed by associations with other persons, so this Article attempts to describe the kind of influence that would cause the invalidity of a gift or disposition. ... .

Generally, a person who challenges a donation because of fraud, duress, or undue influence, must prove it by clear and convincing evidence. However, if at the time the donation was made or the testament executed, a relationship of confidence existed between the donor and the alleged wrongdoer and the alleged wrongdoer was not then related to the donor by affinity, consanguinity or adoption, the person who challenges the donation need only prove the fraud, duress, or undue influence by a preponderance of the evidence. La. C.C. art. 1483.

Here, although the record clearly establishes that the decedent had previously "disinherited" her three children, including Mr. Jones, who now stand to inherit her estate, there was no evidence presented by Mr. Fogg, nor have we found any, to indicate that Mr. Jones' volition was substituted for that of his deceased mother's. Having so found, we must conclude that the trial court did not err in granting the motion for involuntary dismissal.

## Answer to Appeal

The appellee herein filed an answer to the appeal seeking damages for a frivolous appeal. Damages for frivolous appeal are only allowed when it is obvious that the appeal was taken solely for delay or that counsel is not sincere in the view of the law he advocates even though the court is of the opinion that such view is not meritorious. Hampton v. Greenfield, 618 So. 2d 859, 862 (La. 1993).

---

[3] This article presumes a donor who has capacity. Obviously, if a donor lacks capacity, then the entire donation or will is invalid for that reason alone, and issues of fraud and undue influence are irrelevant. La. C.C. art. 1479, Comment (b).

7

While we find the assignment of error lacking in merit, we also find the appellant raised legitimate issues and seriously advocated his position. Therefore, we find that damages for frivolous appeal are not warranted.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court that dismissed the claims of Gary L. Fogg against Glynne Jones, III. Damages and attorney's fees for frivolous appeal are denied. All costs of this appeal are assessed to Appellant, Gary L. Fogg.

**AFFIRMED; ANSWER TO APPEAL DENIED.**