STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2021 CA 0109

TALLYS WHITE

VERSUS

OFFICER X (INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS A
TROOPER WITH THE LOUISIANA STATE POLICE), MICHAEL D.
EDMONSON (INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS
COLONEL WITH THE LOUISIANA STATE POLICE), LOUISIANA STATE
POLICE, (THROUGH LOUISIANA DEPARTMENT OF PUBLIC SAFETY
AND CORRECTIONS), SHERIFF DANIEL EDWARDS (INDIVDUALLY AND
IN HIS OFFICAL CAPACITY AS SHERIFF OF TANGIPAHOA PARISH),
DEPUTY ALBERT SHARP (INDVIDUALLY AND IN HIS OFFICIAL
CAPACITY AS DEPUTY FOR THE TANGIPAHOA PARISH SHERIFF'S
OFFICE), CHIEF RODDY DEVALL (INDIVIDUALLY AND IN HIS OFFICIAL
CAPACITY AS CHIEF FOR THE CITY OF HAMMOND POLICE
DEPARTMENT), OFFICERS Y (INDVIDUALLY AND IN THEIR OFFICIAL
CAPACITIES AS OFFICRES FOR THE CITY OF HAMMOND POLICE
DEPARTMENT), WARDEN HOWARD PRINCE (INDVIDUALLY AND IN
HIS OFFICIAL CAPACITY AS WARDEN FOR THE ELAYN HUNT
CORRECTIONAL CENTER), ELAYN HUNT CORRECTIONAL CENTER

Judgment rendered: **OCT 0 8 2021**

* * * * *

On Appeal from the
Eighteenth Judicial District Court
In and for the Parish Iberville, State of Louisiana
No. 71059, Section A

The Honorable J. Kevin Kimball, Judge Presiding

* * * * *

Edmond D. Jordan
Brusly, Louisiana
and
Elton Herron
Geismar, Louisiana

Attorneys for Plaintiff/Appellant
Tallys White

Ashley E. Bass
Jamie A. Polozola Gomez
Hammond, Louisiana

Attorneys for Defendants/Appellees
Daniel Edwards, individually and in
his official capacity as Sheriff of
Tangipahoa Parish, and Deputy Albert

Sharp in his official capacity as
Deputy for the Parish of Tangipahoa

Timothy R. Richardson
Madisonville, Louisiana

Attorney for Defendant/Appellee
Chief Roddy Devall, individually and
in his official capacity as Chief for the
City of Hammond Police Department

\* \* \* \* \*

**BEFORE: GUIDRY, HOLDRIDGE, AND CHUTZ, JJ.**

**HOLDRIDGE, J.**

This is an appeal from a trial court judgment dismissing with prejudice the plaintiff's claim on a motion for involuntary dismissal during a bench trial.

## FACTUAL AND PROCEDURAL HISTORY

On the night of November 24, 2010, law enforcement was on lookout for an older model Cadillac possibly occupied by two African-American males that committed an armed robbery in Tangipahoa Parish. Tangipahoa Parish Sheriff's Deputy Albert Sharp (Deputy Sharp), the K-9 holder for the Tangipahoa Parish Sheriff's Office, observed an older model blue Cadillac that had two African-American occupants inside. Deputy Sharp pulled his vehicle behind the suspect vehicle and notified dispatch of the two possible suspects. Several other police officers followed Deputy Sharp's vehicle in pursuit of the suspect vehicle. Deputy Sharp attempted to stop the vehicle by using the emergency lights and siren, but the vehicle fled. A chase then ensued throughout the city reaching speeds of 80 miles per hour. A gun was allegedly thrown from the window of the fleeing vehicle. The vehicle chase ended when the plaintiff, Tallys White, stopped his vehicle in a driveway on Tillman Road and began running behind a house. Deputy Sharp stopped his vehicle, released the K-9, and began running towards the plaintiff shouting "Sheriff's Office, K-9 stop" while the dog chased the plaintiff behind the house.

When Deputy Sharp and the K-9 ran to the back of the house, the plaintiff was climbing the hoses of the line for the air conditioner unit attempting to get on the roof of the home. While attempting to detain the plaintiff in custody, Deputy Sharp and the plaintiff both hit the air conditioner unit, knocking it over, while falling to the ground. The plaintiff landed face first on the ground and the K-9 bit him on the ankle and near the buttocks.[1]

---

[1] Deputy Sharp was also bit by the K-9 during the tussle.

3

On November 23, 2011, the plaintiff filed a petition for damages against several defendants, including Deputy Sharp, Sheriff Daniel Edwards (Sheriff Edwards), and Chief Roddy Devall (Chief Devall),[2] alleging that as a result of the incident on November 24, 2010, the plaintiff sustained injuries that made him unable to work and required continuous medical treatment.[3] The plaintiff made several claims against the defendants including that the defendants failed to follow proper procedure, failed to follow proper protocol, falsely arrested the plaintiff, exercised excessive force, and intentionally and/or negligently inflicted emotional distress upon the plaintiff.[4] Therefore, the plaintiff requested $50,000.00 in damages. The defendants answered the plaintiff's petition denying the plaintiff's allegations and asserting several affirmative defenses.

After various pleadings were filed, a bench trial was held on November 8, 2019.[5] Several witnesses testified at the bench trial, including the plaintiff, Deputy Sharp, Sergeant Thomas Mushinsky with the City of Hammond Police Department (Sergeant Mushinsky), Road Officer Derrick Foster with the City of Hammond Police Department (Officer Foster), Road Sergeant Sharah M. Finn with the

---

[2] All references to law enforcement officials are to their rank in 2010.

[3] The plaintiff named several other defendants in his petition for damages that were either dismissed from the case or they are irrelevant to the instant matter.

[4] The plaintiff also alleged that the defendants violated Article I, Section 2 and Article 1, Section 5 of the Louisiana Constitution; falsely imprisoned the plaintiff; denied the plaintiff medical attention, and committed assault and battery against him.

[5] A motion for summary judgment was signed in favor of Chief Devall, Deputy Sharp, and Sheriff Edwards, dismissing the plaintiff's claims with prejudice. On July 16, 2014, the plaintiff filed a "Motion for Reconsideration of order granting Defendants' Motion for Summary Judgment." On September 2, 2014, the trial court signed an order granting the plaintiff a devolutive appeal. The trial court granted the plaintiff's motion for reconsideration on November 5, 2014. We note that it appears that the order granting the plaintiff's devolutive appeal was premature in accordance with La. C.C.P. art. 2087(D), as there was an outstanding motion for new trial. See Harris v. Louisiana Department of Public Safety and Corrections, 2019-1657 (La. App. 1 Cir. 8/3/20), 310 So.3d 211, 214 (This Court held that a motion to reconsider is generally treated as a motion for new trial if the judgment is a final appealable judgment. In such a case, the motion is considered premature if granted before the court disposes of all timely filed motions for new trial.)

4

Tangipahoa Parish Sheriff's Department (Sergeant Finn), and Terrance Peters.[6] At the conclusion of the bench trial, the defendants made a motion for involuntary dismissal in accordance with La. C.C.P. art. 1672(B). After considering all of the evidence presented, the trial court granted the defendants' motion for involuntary dismissal as to all of the defendants with prejudice. In its oral reasons, the trial court stated, in pertinent part:

> [T]he defense has moved for a[n] ... involuntary dismissal. I think I'm required to weigh all the evidence that's submitted at this point. I think the burden that the plaintiffs have to prove -- to prove to me by a preponderance of the evidence. .... You know, I really feel [the plaintiff] put himself in this situation.
>
> You know, I think his injuries came from this incident. I believe that, but the question is whether the police used excessive force or not. I find the most credible witness and not just because [the plaintiff] said he was a good guy, before he said that, I found [Deputy] Sharp to be the most credible witness. You know, he was in for everybody's testimony. He could have very easily changed his to fit the Hammond Police Officers, and he didn't. I don't know what they were doing. I know what I was doing. And he testified that [the plaintiff] was climbing up on a roof, and he had to pull him down. You know, and that's where we get into -- to where I'm looking at the evidence of the dog bite of him. You know, when he talked about the training of the dog. He d[oes not] get in a tussle. He let's the dog do the tussling. So that's why I believe him about the thing with the roof because he's trying to reach for the guy, the dog jumped up and grabbed him by mistake. If the guy is on the ground, I don't see [Deputy] Sharp getting on the ground with him. He's going to let the dog handle it. I believe [the plaintiff] was injured in this incident, this tussle, this resisting that occurred.
>
> You know, [Deputy] Sharp said he got out and he ran around the building. He went back there and saw [the plaintiff] climbing up, jumped on there. I believe that. ... I mean, the only person I heard that [the plaintiff] got brutalized by the police officers is [the plaintiff]. I don't feel it's been proven to me by a preponderance of the evidence. Therefore, I'm granting the Involuntary Motion for Dismissal.

The trial court signed a judgment in accordance with its oral ruling on November 26, 2019. Thereafter, the plaintiff appealed.

---

[6] The plaintiff also offered the testimony of Sandra Peters, the plaintiff's aunt, via deposition.

## APPLICABLE LAW

Louisiana Code of Civil Procedure article 1672(B)[7] provides the basis for an involuntary dismissal at the close of a plaintiff's case in a bench trial, when the plaintiff has not shown a right to relief based on the facts and law. **Lakeshore Chrysler Dodge Jeep, Inc. v. Windstream Communications, Inc.**, 2017-0841 (La. App. 1 Cir. 12/21/17), 240 So.3d 939, 942. In a non-jury case,[8] the appropriate standard for the trial court's determination of a motion to dismiss is whether the plaintiff has presented sufficient evidence in its case-in-chief to establish its claim by a preponderance of the evidence. **Hutzler v. Cole**, 93-0468 (La. App. 1 Cir. 3/11/94), 633 So.2d 1319, 1323, writ denied, 94-0850 (La. 5/13/94), 637 So.2d 1070. The trial court examines the evidence as a whole, without any special inferences in favor of the opponent to the motion, to determine whether the fact or cause sought to be proved is more probable than not. **Lakeshore Chrysler Dodge Jeep, Inc.**, 240 So.3d at 942-43. However, absent circumstances in the record that cast suspicion on the reliability of the testimony and sound reasons for its rejection, uncontroverted evidence should be taken as true to establish a fact for which it is offered. **Id.**, 240 So.3d at 943.

The trial court's grant of an involuntary dismissal is subject to the manifest error standard of review. **Broussard v. Voorhies**, 2006-2306 (La. App. 1 Cir. 9/19/07), 970 So.2d 1038, 1041, writ denied, 2007-2052 (La. 12/14/07), 970 So.2d 535. Therefore, in order to reverse a grant of involuntary dismissal, we must find that there is no factual basis for the trial court's finding or that the finding is clearly

---

[7] Louisiana Code of Civil Procedure article 1672(B) provides:

> In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.

[8] In a jury case, the proper motion is a motion for directed verdict. See La. C.C.P. art. 1810.

wrong. **Id.**, 970 So.2d at 1042. <u>See also</u> **Stobart v. State through Dept. of Transp. and Development**, 617 So.2d 880, 882 (La. 1993). The issue to be resolved is not whether the trial court was right or wrong, but whether its conclusion was a reasonable one. <u>See</u> **Stobart**, 617 So.2d at 882.

Even though an appellate court may feel its own evaluations and inferences are more reasonable than the trial court's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. **Id.** Moreover, where two permissible views of the evidence exist, the fact finder's choice between them cannot be clearly wrong. **Id.,** 617 So.2d at 883. Additionally, the principle that questions of credibility are for the trier of fact applies to the evaluation of expert testimony as well, unless the stated reasons of the expert are patently unsound. **Hutzler,** 633 So.2d at 1324.

## DISCUSSION

In his sole assignment of error, the plaintiff argues that the trial court erred in granting the defendants' motion for involuntary dismissal. Specifically, the plaintiff argues that the testimonial evidence presented at the bench trial from himself, his aunt, Sandra Peters, and his cousin, Terrance Peters, showed that the defendants used excessive force on the plaintiff that resulted in his injuries. At the bench trial, the plaintiff testified that he knowingly fled from the police on a "high speed chase." When asked why he did not stop for the police officers, the plaintiff stated that it was strange to him that the police officers were following him because he was within the city limits and a sheriff was following him. The plaintiff made several allegations at the bench trial regarding the November 2010 incident including that he was punched seven or eight times in the face by the police officers, bit by the K-9 several times in different areas of his body, and that his head was slammed into the air conditioner unit by a police officer resulting in a head injury. However, the plaintiff could not identify who hit him.

The plaintiff further testified that he never attempted to jump on top the air conditioner unit though he later testified that the top of his head hit the air conditioner unit. When asked how his head hit the air conditioner unit, the plaintiff stated that the police officers "slammed [his] head into it." The plaintiff further testified that once he was handcuffed, the police officers began beating his face. The plaintiff stated that when he could not take any more punches on one side of his face, he turned over to the other side to let the police officers beat him. The defendants' counsel questioned the plaintiff about his medical records as to why the records do not reveal that the plaintiff had any injuries to the right side of his face. The defendants counsel pointed out that although the plaintiff alleges that he was hit several times in the face by the police officers, his medical records reveal that only one side of his face had visible bruising.

In support of his position, the plaintiff submitted the testimony of Sandra Peters and Terrance Peters, who were both present when the incident occurred. Sandra Peters' deposition testimony in 2013 revealed that she never physically saw the plaintiff being beaten by police officers, "but [she] could tell that he was being beaten." However, in 2019 her testimony changed in that she saw a beating to the plaintiff that lasted fifteen or twenty minutes. Similar to Sandra Peters 2013 deposition testimony, Terrance Peters' testimony at the bench trial revealed that he never saw a police officer strike the plaintiff.

Several officers testified at the bench trial in support of the defendants' position that excessive force was not used on the plaintiff. Deputy Sharp testified that he never hit the plaintiff and he never saw a police officer hit the plaintiff. Deputy Sharp further testified that the only injuries he observed on the plaintiff were the K-9 bites to his ankle and buttocks. Deputy Sharp also confirmed that he did not see blood on the plaintiff's face. Sergeant Mushinsky testified that when he got to the rear of the home, he saw Deputy Sharp on the scene with his K-9 and

8

the plaintiff was on the ground kicking the dog and yelling. Sergeant Mushinsky further testified that the plaintiff was not following verbal commands, so he approached him and attempted to place the plaintiff into custody. When he did this, the plaintiff "struck [him] and attempted to bite [him.]"

Officer Foster testified that his vehicle was second in line behind Deputy Sharp during the November 2010 incident. Officer Foster stated that the plaintiff and the police officers engaged in a high-speed chase because the plaintiff refused to stop his vehicle. Officer Foster further testified that once the plaintiff stopped his vehicle and ran around the house, Officer Foster ran around the house as well to find the plaintiff and Deputy Sharp. Once he got to the side of the house, Officer Foster stated that he saw the plaintiff "hanging off the side of the house by way of the [air conditioner] lines." Officer Foster corroborated Deputy Sharp's testimony that the police officers ordered the plaintiff to get down, but he did not comply. Once the police officers got the plaintiff down from the air conditioner unit, Officer Foster stated that the plaintiff was swinging and kicking at the police officers and the K-9. Officer Foster confirmed that he did not see any police officer punch, kick, or strike the plaintiff.

After the trial court heard the testimony from the plaintiff and the witnesses, the trial court found that Officer Sharp was the most credible witness. The trial court stated that "the evidence is more consistent with what Officer Sharp said as to how [the plaintiff] got his injuries[,] which was falling from the roof onto the air conditioner unit." Thus, the trial court determined that the plaintiff's injuries came from Officer Sharp pulling the plaintiff down from the roof.

In matters of credibility, an appellate court gives great deference to the findings of the trier of fact. **Price v. Exxon Corp.**, 95-0392 (La. App. 1 Cir. 11/9/95), 664 So.2d 1273, 1277. It is the task of the trial judge to determine the credibility of the witnesses and this determination will not be disturbed absent

9

manifest error. **Rich v. Jurasin**, 2012-0159 (La. App. 1 Cir. 11/2/12), 2012 WL 5383320, at *3 (unpublished). Where a fact finder's finding is based on its decision to credit the testimony of one or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. **Mt. Everett African Methodist Episcopal Church v. Carter**, 96-2591 (La. App. 1 Cir. 12/29/97), 705 So.2d 1179, 1183. Accordingly, we find no error in the trial court's finding that Officer Sharp was more credible than the plaintiff based on the discrepancies between the plaintiffs' testimony and the police officers' testimonies. Due to the trial court finding Officer Sharp to be more credible and accepting his version of the facts as to how the plaintiff was injured, we find that the trial court did not err in holding that the plaintiff did not establish his case by a preponderance of the evidence. See **Ragas v. Hingle**, 2013-1577 (La. App. 4 Cir. 7/9/14), 146 So.3d 687, 691.

After a thorough review of the record, including the transcript of the bench trial, we find that the trial court was not manifestly erroneous in granting the defendants' motion for involuntary dismissal based on finding that the plaintiff did not establish his claim by a preponderance of the evidence. Based on the evidence offered and testimony presented, the plaintiff failed to show by a preponderance of the evidence that the defendants used excessive force on the plaintiff during the November 2010 incident. The trial court noted that the testimony showed that many people were at the scene of the November 2010 incident; however, the only individual who testified that he was struck by police officers was the plaintiff himself. Considering our finding that a reasonable factual basis exists for the trial court's determination that the plaintiff did not satisfy his burden of proof, we find no error in the trial court's granting the defendants' motion for an involuntary dismissal.

**CONCLUSION**

The November 26, 2019 judgment of the trial court granting the motion for involuntary dismissal and dismissing Tallys White's claim with prejudice is affirmed. All costs of this appeal are assessed to the plaintiff, Tallys White.

**AFFIRMED.**